UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

UMAR GUIRA, an infant, by his mother and natural guardian,     Case No.:
ASSETA NANEMA, and ASSETA NANEMA, individually,

                                        **COMPLAINT**

                        Plaintiffs,

      -against-

UNITED STATES OF AMERICA

                        Defendants.
-------------------------------------------------------------------X

Plaintiff, UMAR GUIRA., an infant, by his mother and natural guardian, ASSETA NANEMA and ASSETA NANEMA individually, by their attorneys, DOUGLAS & LONDON, P.C., complaining of the Defendants, respectfully allege, upon information and belief, as follows:

## **INTRODUCTION**

1.   This is an action against the Defendant United States of America under the Federal Tort Claims Act (28. U.S.C.§ 2671 et seq.) and 28 U.S.C. § 1346(b) for negligence and professional malpractice in connection with medical care provided to Plaintiffs by the defendant, and, in particular, Sandy Lau Bui, D.O.

2.   The claims herein are brought against defendant pursuant to Federal Tort Claim Act (28. U.S.C.§ 2671 et seq.) and 28 U.S.C. § 1346(b) for money damages as compensation for personal injuries caused by defendant's negligence.

3.   Plaintiffs have fully complied with the provision of 28 U.S.C. §2675 of the Federal Tort Claims Act. Standard Form 95 attached as Exhibit A.

4.   Sandy Lau Bui, D.O the physician that delivered the infant has been deemed eligible for coverage under Federal Tort Claims Act 28 USC 2671 et seq pursuant to the Federally Supported Health Centers Assistance Act 42 USC Section 233(g)-(n).

5.   This suit has been timely filed in that Plaintiff timely served notice of his claim less than two years after the incident forming the basis of this suit. See Exhibit A.

6. The presentation of the claim was made timely to the appropriate federal agency. See Exhibit A.

7.   Plaintiff is now filing this Complaint pursuant to 28 USC §2401(b) as more than 6 months have elapsed since service of the FCTA and defendant has yet to formally respond.

## PARTIES, JURIDICTION AND VENUE

8.   Jurisdiction is proper under 28 USC §1346(b)(1)

9.   Venue is proper under 28 USC §1402(b)

## AS AND FOR A FIRST CAUSE OF ACTION
## (MEDICAL MALPRACTICE)

10.   Plaintiff, infant, Umar Guira born in October 2018 at the New York & Presbysterian Hospital , was and is a resident of the City of  New York and State of New York, within the County of Bronx .

11.   Plaintiff, mother and natural guardian, Asseta Nanema was and is a resident of the City of New York and State of New York, within the County of the Bronx, residing at 510 Jackson Avenue, Apt 3F, Bronx NY 10455.

12.   At all of the times herein mentioned, Sandy Lau Bui, D.O. was or represented herself to be a physician duly licensed and authorized to practice medicine in the State of New York.

13.     At all times herein mentioned, Sandy Lau Bui, D.O.  maintained and still maintains a medical office located at 268 Canal Street New York NY 10013.

14.     Upon information and belief, at all times hereinafter mentioned, Sandy Lau Bui, D.O. specialized in the field of medicine; more specifically obstetrics and gynecology.

15.     At all times hereinafter mentioned Sandy Lau Bui, D.O. held herself out to be a obstetrician/gynecologist offering professional services to the public in general, and to the plaintiff and infant plaintiff, in particular.

16.     Upon information and belief, and at all times hereinafter mentioned, Sandy Lau Bui, D.O. was a physician duly licensed to practice medicine in the State of New York.

17.     Upon information and belief and at all times hereinafter mentioned the Sandy Lau Bui, D.O. was a physician, agent, independent contractor, servant, affiliated, associated, and/or employed with/by defendant.

18.     At all of the times herein mentioned, Defendant Sandy Lau Bui, D.O. represented herself to be able, competent, and qualified to order, recommend, request, advise, perform, render, or provide all of the medical, surgical, gynecological, obstetrical, diagnostic, physical examinations, evaluations, consultations, care, treatments, procedures, surgeries, services and advice ordered for, recommended for, requested for, advised for, performed upon, rendered to, provided for, or required by the infant plaintiff and plaintiff.

19.     At all of the times herein mentioned, Sandy Lau Bui, D.O. undertook to and did order, recommend, request, advise, perform, render, and provide medical, gynecological, obstetrical, diagnostic, physical examinations, evaluations, consultations, care, treatments, procedures,  surgeries, services, and advice of, for, and to the infant plaintiff and plaintiff.

20.    Sandy Lau Bui, D.O.  is an employee of the defendant.

21.    That from on or about September 30, 2018 up through and continuing through and including, October 2, 2018, infant-plaintiff, Umar Guira. and his mother Plaintiff Asseta Nanema sought treatment from defendant by its agents, servant, staff and/or employee Sandy Lau Bui, D.O.  and remained under the continuous care and treatment of said defendant and provider, including the provision of certain medical care diagnosis, treatment and advice.

22.    From on or about September 30, 2018 and continuing up through and including October 2, 2018, infant plaintiff and his mother sought the medical care and surgical care of defendant by its agents, servant, staff and/or employee Sandy Lau Bui, D.O. for certain medical complaints, medical care, surgical care, diagnosis, medical advice, procedures and treatment for complaints, signs, and symptoms from which they were suffering and defendants rendered medical care, diagnosis, treatment and services.

23.    The above medical care, surgical care, diagnosis, treatment and services rendered to  plaintiffs by defendant by its agents, servant, staff and/or employee Sandy Lau Bui, D.O. was rendered careless, unskillfully, negligently, unnecessarily and not in accordance with good and accepted standards of medical care, and obstetrical/gynecology care including but not limited to: in negligently failing to timely and properly detect, diagnose, treat and address shoulder dystocia during delivery; in failing to timely and properly document onset shoulder dystocia;  in failing to timely and properly perform maneuvers to deliver infant upon onset of shoulder dystocia; in negligently failing to deliver the shoulders; in improperly delivering shoulders; in improperly delivering the head;  in  negligently delivering infant from birth canal; in failing to timely and properly perform  maneuvers in order to safely deliver infant from the birth canal;  in applying negligent traction to head; in applying improper and contraindicated traction to head; in applying negligent

lateral traction, in applying negligent downward traction, in applying unsafe and contraindicated traction; in applying unsafe and contraindicated traction; in negligently manipulating shoulders, head and neck; in negligently applying pressure to head, shoulders and neck; in negligently manipulating head; in negligently positioning head; in negligently pulling head; in negligently pulling shoulders; in negligently applying improper force and traction to shoulders; in that excessive pressure/measures were used on newborn's head; in that force exerted in an effort to deliver infant was excessive; in using excessive force during delivery as is evidenced by severity of injuries; in causing permanent Erbs Palsy requiring surgery to infant; in forcefully extracting newborn in a contraindicated manner; in failing to designate subject pregnancy as a high risk pregnancy; in negligently permitting a vaginal delivery to occur on infant plaintiff's date of birth; in negligently assessing fetal weight and size; in negligent addressing fetal weight; in failing to timely and properly recognize and address risks for shoulder dystocia; in failing to timely and properly address risks for Erbs Palsy; in failing to timely and properly recognize the increased the risk for erbs palsy and shoulder dystocia; in failing to recognize and address that prolonged labor increase risk for shoulder dystocia; in failing to timely and properly advise and educate infant plaintiff's mother as to the increased risk for shoulder dystocia; in failing to timely and properly assess pelvic anatomy; in failing to timely and properly call for assistance before delivery in light of increased risk for shoulder dystocia; in that this defendant negligently failed to properly obtain informed consent from infant plaintiff's mother; in that defendant committed medical malpractice by failing to educate this patient as to risks, benefits and alternatives as it pertains to a vaginal delivery vs. C section; in light of the increased risk for shoulder dystocia, a C section should have been performed; in negligently utilizing contraindicated medications; in failing to recognize earlier labor induction as treatment alternative; in negligently failing to obtain informed consent from the mother by means of failing to

discuss increased risk for shoulder dystocia and by failing to timely and properly discuss option of C Section; in failing to perform a C Section on infant plaintiff's date of birth;  in  failing to arrange for performance of a C Section; in failing to alert key personnel prior to delivery as a precaution due to increased risk for shoulder dystocia; in that the nursing staff provided negligent care in regards to the labor and delivery and in regards to the treatment for shoulder dystocia including but not limited to negligent fundal pressure on the mother's stomach; that in the absence of a disease process involving the brachial plexus like cancer or infection in the region of the brachial plexus that can directly injure the plexus, permanent brachial plexus injury in the newborn can only occur when the brachial plexus is traumatically disrupted and that in this case the brachial plexus was negligently and traumatically disrupted; in this case, the infant plaintiff's head was negligently moved a sufficient distance and/or with enough force to cause the elongation of  the subject  nerves beyond their plastic limit causing the permanent injury described in the medical records; the injury to the nerve of the brachial plexus indicates that nerves were exposed to a substantial degree of stretching that was beyond their elastic limit; and said defendants were otherwise negligent, careless and departed from good and accepted medical and nursing practice.

24.     As a result of all of the foregoing negligence on part of defendant by its agents, servant, staff and/or employee Sandy Lau Bui, D.O. infant Plaintiff Umar Guira was caused to and did suffer and sustain severe and serious personal injuries that are permanent in nature and infant Plaintiff was otherwise injured as a consequence of the subject Malpractice and Negligence. See attached medical report of Daniel Adler, M.D. annexed as Exhibit B.

25.     As a result of all of the foregoing negligence and malpractice of defendant by its agents, servant, staff and/or employee Sandy Lau Bui, D.O. infant Plaintiff was caused to and did suffer and sustain severe and serious conscious pain and suffering that are permanent in nature.

26.     As a result of all of the foregoing, Infant Plaintiff was caused to and did suffer and sustain severe and serious mental anguish that are permanent in nature.

27.     As a result of all of the foregoing, Infant Plaintiff was caused to and did suffer and sustain substantial economic losses.

28.     The aforesaid severe, serious and permanent personal injuries, severe, serious and permanent  conscious pain and suffering, severe, serious and permanent mental anguish, and substantial economic losses suffered and sustained by Infant Plaintiff were occasioned by reason of the negligence, carelessness, and medical malpractice of defendant by its agents, servant, staff and/or employee Sandy Lau Bui, D.O.. and said injuries were not caused by or contributed to by plaintiff or  infant plaintiff in any manner.

29.     As a direct and proximate result of the foregoing negligence and medical malpractice of defendant by its agents, servant, staff and/or employee Sandy Lau Bui, D.O. the infant plaintiff, Umar Guira, sustained serious and permanent personal injuries and has been caused to suffer severe physical pain and mental anguish as a result thereof, including diminished enjoyment of life, medical expenses, and other serious injuries, which are permanent and lasting in nature, and that Plaintiff has been incapacitated from his regular activities, including but not limited to social and economic activities.

30.     As a result of all of the foregoing, Infant Plaintiff has been injured and damaged in an amount not exceeding the amount set forth in the Administrative Claim.

## AS AND FOR A SECOND CAUSE OF ACTION
## (LACK OF INFORMED CONSENT)

31.    Plaintiffs repeat, reiterate and re-allege each and every allegation contained herein with the same force and effect as though fully set forth at length herein.

32.    There were certain risks, hazards, dangers and alternatives to the aforesaid medical care, treatment, surgeries and procedures rendered.

33.    The Plaintiffs had no knowledge of the aforesaid risks, hazards, dangers or alternatives to the proposed care, treatment, procedures, and surgeries.

34.    The Plaintiffs had the right to know of the aforesaid risks, hazards, dangers and alternatives to the proposed care, treatment, procedures and surgeries.

35.    The defendant by its agents, servant, staff and/or employee Sandy Lau Bui, D.O. acting individually, and/or through their respective agents, servants and/or employees, had a duty to warn the parent(s) of the infant plaintiff, including the Plaintiff, Umar Guira, as the parent and natural guardian of the infant plaintiff, of the risks, hazards, dangers and alternatives to that portion of the aforesaid medical care, treatment, procedures and surgeries rendered by the Defendant.

36.    The defendant by its agents, servant, staff and/or employee Sandy Lau Bui, D.O. acting individually, and/or through their respective agents, servants, partners, and/or employees failed to warn or advise the Plaintiffs, of the aforesaid risks, hazards, dangers and alternatives to the aforesaid medical care and treatment.

37.    The defendant by its agents, servant, staff and/or employee Sandy Lau Bui, D.O. acting individually, and/or through its agents, servants, partners, and/or employees, failed to obtain the informed consent of the Plaintiffs to the proposed treatment, care, procedures, surgeries.

38.     Had the Plaintiff, Asseta Nanema, as the parent and natural guardian of the infant

plaintiff, or any reasonable person so situated been informed of the aforesaid risks, hazards and

alternatives, she would not have consented to the aforesaid medical care and treatment for her son,

the infant plaintiff.

39.     As a direct and proximate result of the foregoing negligence and medical

malpractice of defendant by its agents, servant, staff and/or employee Sandy Lau Bui, D.O. acting

individually and/or through their agents, servants, partners and/or employees, the infant Plaintiff,

sustained serious personal injuries, including but not limited Erbs palsy, severe pain and suffering,

physical and mental pain and suffering and mental anguish, and other injuries too numerous to

mention herein.

40.     The lack of informed consent herein on part of defendant by its agents, servant,

staff and/or employee Sandy Lau Bui, D.O.  is a proximate cause of the injuries, conditions, and

disabilities for which recovery is sought.

41.     As a direct and proximate result of the foregoing negligence and medical

malpractice of defendant by its agents, servant, staff and/or employee Sandy Lau Bui, D.O. the

infant plaintiff Umar Guira sustained serious and permanent personal injuries and has been caused

to suffer severe physical pain and mental anguish as a result thereof, and that Infant Plaintiff has

been incapacitated from his regular activities, including but not limited to social and economic

activities.

42.     That by reason of the foregoing negligence of defendant by its agents, servant, staff

and/or employee Sandy Lau Bui, D.O. the infant Plaintiff, has been damaged in an amount not

exceeding the amount set forth in the Administrative Claim.

## AS AND FOR A THIRD CAUSE OF ACTION ON
## (LOSS OF SERVICES, SOCIETY, AFFECTION)

43.    Plaintiffs repeat, reiterate and re-allege each and every allegation contained herein with the same force and effect as though fully set forth at length herein.

44.    Plaintiff Asseta Nanema, is the lawful mother of infant plaintiff Umar Guira  and in and as much is entitled to his society and is responsible for his care, maintenance, support and attention.

45.    That the Plaintiff, Asseta Nanema, being responsible for infant's necessaries, became obligated for that medical and hospital expense, and medicines and was deprived of the infant's society, and may continue to be further obligated and further damaged thereby.

46.    As a result of the foregoing negligence and malpractice of defendant by its agents, servant, staff and/or employee Sandy Lau Bui, D.O., Plaintiff Asseta Nanema was deprived of the society of her son Umar Guira and was compelled to expend and become liable for diverse sums of money in an effect to cure and relieve her son of his injuries, and since his injuries are believed to be of a permanent nature, she will continue to be so deprived and liable in the future.

47.    By reason of the foregoing, Plaintiff, Asseta Nanema is entitled to recover all of her damages from the Defendants.

48.     By reason of the foregoing, Plaintiff, Asseta Nanema is entitled to recover all of her damages from the Defendant in an amount not exceeding the amount set forth in the Administrative Claim.

**WHEREFORE,** plaintiffs, Umar Guira an infant by his mother and natural guardian**,** Asseta Nanema  and Asseta Nanema  Individually, demand judgment against the Defendants on the First, Second, and Third Causes of Action; more specifically, in the amount of $1,500,000.00 as to claims of Umar Guira and in the amount of $250,000.00 as to claims of Asseta Nanema together with interest, attorneys fees, costs and disbursements of this action.

Dated:  New York, New York

　　　　March 25, 2021

　　　　　　　　　　　　　　　　Yours, etc.,

　　　　　　　　　　　　　　　　**DOUGLAS & LONDON, P.C.**

　　　　　　　　　　　　　　　　*/s/ Randolph Janis*
　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　Randolph D. Janis, Esq.
　　　　　　　　　　　　　　　　Attorneys for Plaintiffs
　　　　　　　　　　　　　　　　59 Maiden Lane, 6th Floor
　　　　　　　　　　　　　　　　New York, New York 10038
　　　　　　　　　　　　　　　　(212) 566-7500

# EXHIBIT A



**Douglas & London**

59 Maiden Lane, 6th Floor
New York, NY 10038

Phone: (212) 566-7500
Fax: (212) 566-7501

Gary J. Douglas[P]
Michael A. London[*]
Stephanie O'Connor[*]
Randolph D. Janis

Virginia E. Anello[^]
Rebecca G. Newman[*]
Robin J. Bond[*]
Lara J. Say[*n]
Alicia Ellsayed
Diana Yastrovskaya
Jennifer Mittasch
Tate J. Kunkle[†]
Anne E. Accettella
Michael D. Sharp[F]

[*] Also admitted in NJ
[P] Also admitted in PA
[^] Also admitted in LA & MA
[Þ] Also admitted in NC
[†] Also admitted in CT
[F] Of Counsel

*The attorney in charge of New Jersey practice is Michael A. London*

July 31, 2020

**VIA EMAIL**
HHS-FTCA-CLAIMS@hhs.gov
HHS Office of the General Counsel
General Law Division/ATTN: Claims
330 C Street, S.W.
Switzer Building, Suite 2100
Washington, D.C. 20201

**Re: Claims for Damages under the Federal Tort Claims Act on behalf of ASSETA NANEMA herself and her minor child, UMAR GUIRA**

Dear Counsel:

Kindly be advised that Douglas & London, P.C. represents ASSETA NANEMA and her son and minor child, UMAR GUIRA ("Claimants"). Enclosed please find administrative claims we are filing on their behalf under the Federal Tort Claims Act. The claims consist of (1) a Claim Authorization Form; (2) a Standard Form 95 for each Claimant; and (3) an Attachment to the Standard Form 95 detailing the basis of their claims.

This Claim sounds in Medical Malpractice and Negligence.

In the attached Standard Form 95 for each claimant and the Attachment to the Standard Form 95 we detail how the infant claimant UMAR GUIRA was caused to suffer a birth related brachial plexus injury involving his right upper extremity also known as an Erbs Palsy injury due to SANDY LAU BUI, D.O. (an employee of the United States of America) providing negligent care and treatment during the labor and delivery of the infant claimant.

During the subject pregnancy herein pertaining to UMAR GUIRA, infant claimant's mother was treated at medical and hospital facilities including the Charles B. Wang Community Health Center located at 268 Canal Street New York, New York 10013 for prenatal care and New York Presbyterian Hospital located at 170 Williams Street, New York, New York 10038 for the subject labor and delivery.

UMAR GUIRA was born on October 2, 2018 at New York Presbyterian Hospital and delivered by SANDY LAU BUI D.O., (an employee of the United States of America).

As a result of negligence and malpractice on part of SANDY LAU BUI D.O., (an employee of the United States of America) infant claimant UMAR GUIRA was caused to and did suffer and sustain serious personal injuries that are permanent in nature including Erbs Palsy and infant claimant was otherwise injured as a consequence of the subject Malpractice and Negligence. The injuries suffered by the infant are detailed in the Attachment to the Standard Form 25.

ASSETA NANEMA also suffered injury as a consequence of this malpractice of SANDY LAU BUI D.O., (an employee of the United States of America) including Loss of Services, Society and Affection of her son, the infant claimant. ASSETA NANEMA, is the lawful mother of infant claimant and in and as much is entitled to his society and is responsible for her care, maintenance, support and attention.

ASSETA NANEMA, being responsible for infant's necessaries, became obligated for that medical and hospital expense, and medicines and was deprived of the infant's society, and may continue to be further obligated and further damaged thereby.

As a result of the foregoing negligence and malpractice of SANDY LAU BUI D.O., Plaintiff ASSETA NANEMA was deprived of the society of her son UMAR GUIRA and was compelled to expend and become liable for diverse sums of money in an effect to cure and relieve her son of his injuries, and since his injuries are believed to be of a permanent nature, she will continue to be so deprived and liable in the future.

We are submitting these claims without the benefit of formal discovery. Claimants reserve the right to amend or supplement their claims.

Please do not hesitate to contact me if you have any questions or require additional information. I can be reached at the contact info above for my law firm and also directly at 646 763 2160 or by email at rjanis@douglasandlondon.com. I am presently working remotely due to the pandemic.

Very truly yours,
**DOUGLAS & LONDON, P.C.**

Randolph Janis

Enclosures:

1. Claim Authorization Form
2. Standard Form 95s for each Claimant
3. Attachment to Standard Form 95s

**ATTORNEY AUTHORIZATION**

TO:

HHS Office of the General Counsel
General Law Division/ATTN: Claims
330 C Street, S.W.
Switzer Building, Suite 2100
Washington, D.C. 20201

## AUTHORIZATION FOR ATTORNEY TO FILE FEDERAL TORT CLAIMS ACT CLAIMS ON BEHALF OF INFANT CLAIMANT UMAR GUIRA AND CLAIMANT ASSETA NANEMA (MOTHER AND NATURAL GUARDIAN OF UMAR GUIRA)

I, ASSETA NANEMA, (born March 24, 1988), am the mother and natural guardian of infant claimant UMAR GUIRA (born October 2, 2018) and I hereby designate and authorize our attorney, Randolph Janis, Esq., an attorney with the law firm of Douglas & London, P.C. to represent my son UMAR GUIRA and myself as claimants and to continue any and all claims and/or actions which have been filed or will be filed, on my son's behalf, my behalf and/or on behalf of both of us, arising from an incident that occurred on October 2, 2018 as described with more specificity as follows:

On October 2, 2018 at approximate 2:10 AM (per the hospital chart) my son UMAR GUIRA was born at New York Presbyterian Hospital located at 170 William Street New York, New York 10038. He was delivered by SANDY LAU BUI, D.O. It is alleged that the care provided by SANDY LAU BUI, D.O. during the labor and delivery admission from September 30, 2018 up to and inclusive of October 2, 2018 was careless, negligent and deviated from good and accepted medical practice resulting in my son sustaining Erbs Palsy, a brachial plexus nerve injury. Upon information and belief, Erbs Palsy occurred due to SANDY LAU BUI, D.O. negligently applying traction/force to my son UMAR GUIRA's head and body during his delivery resulting in a nerve injury to his brachial plexus nerves. It is believed that SANDY LAU BUI, D.O. was otherwise negligent, careless and deviated from good and accepted medical practice in regards to the subject labor and delivery.

ASSETA NANEMA (mother and natural guardian
of UMAR GUIRA) on behalf of Infant Claimant
UMAR GUIRA and individually as Claimant
ASSETA NANEMA.

Sworn to before me
This 7th day of July, 2020

JOHN K COYLE
NOTARY PUBLIC-STATE OF NEW YORK
No. 01CO5046090
Qualified in Nassau County
My Commission Expires 07-03-20[23]

NOTARY PUBLIC

| CLAIM FOR DAMAGE, INJURY, OR DEATH | **INSTRUCTIONS:** Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit to Appropriate Federal Agency:<br><br>HHS Office of the General Counsel<br>General Law Division/ATTN Claims<br>330 C Street, S.W., Switzer Building, Suite 2100<br>Washington DC 20201 | 2. Name, address of claimant, and claimant's personal representative if any. (See instructions on reverse). Number, Street, City, State and Zip code.<br><br>Umar Guira by Asseta Nanema his mother and natural guardian<br>510 Jackson Avenue, 3F<br>Bronx NY 10455 |
|---|---|

| 3. TYPE OF EMPLOYMENT | 4. DATE OF BIRTH | 5. MARITAL STATUS | 6. DATE AND DAY OF ACCIDENT | | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|---|---|
| ☐ MILITARY ☒ CIVILIAN | 10/02/2018 | SINGLE | 10/02/2018 | Tuesday | Approx 2AM |

8. BASIS OF CLAIM (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary).

On October 2, 2018 at approximately 2:10 AM UMAR GUIRA was born at New York Presbyterian Hospital located at 170 William Street New York, New York 10038. He was negligently delivered by SANDY LAU BUI, D.O. The care provided by SANDY LAU BUI, D.O. during the labor and delivery admission from September 30, 2018 up to and inclusive of October 2, 2018 was negligent and deviated from accepted medical practice resulting in UMAR GUIRA sustaining Erbs Palsy, a brachial plexus nerve injury deemed permanent in nature. The Erbs Palsy injury occurred due to said doctor using negligent force and traction to the head, neck, shoulders and body of the infant UMAR GUIRA during delivery of the infant. See attached page entitled "#8 Further Detail".

| 9. | PROPERTY DAMAGE |
|---|---|

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

## NONE NO PROPERTY DAMAGE

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF THE DAMAGE AND THE LOCATION OF WHERE THE PROPERTY MAY BE INSPECTED. (See instructions on reverse side).

## NONE NO PROPERTY DAMAGE

| 10. | PERSONAL INJURY/WRONGFUL DEATH |
|---|---|

STATE THE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE THE NAME OF THE INJURED PERSON OR DECEDENT.

As a consequence of the malpractice of SANDY LAU BUI, D.O., UMAR GUIRA was caused to sustain Erbs Palsy, an injury to his brachial plexus nerves caused by SANDY LAU BUI, D.O negligently applying excessive and improper force and traction during the delivery of UMAR GUIRA on October 2, 2018 and by otherwise being negligent in preventing the Erbs Palsy injury and sequela caused UMAR GUIRA .

| 11. | WITNESSES |
|---|---|
| **NAME** | **ADDRESS (Number, Street, City, State, and Zip Code)** |
| ASSETA NANEMA | 510 Jackson Avenue 3F Bronx NY 10455 |
| HAMIDOU GUIRA | 510 Jackson Avenue 3F Bronx NY 10455 |

| 12. (See instructions on reverse). | | AMOUNT OF CLAIM (in dollars) | |
|---|---|---|---|

| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights). |
|---|---|---|---|
| NONE | 1,500,000.00 | NONE | 1,500,000.00 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT. (See instructions on reverse side). | 13b. PHONE NUMBER OF PERSON SIGNING FORM | 14. DATE OF SIGNATURE |
|---|---|---|
| | 212 566 7500 Randolph Janis, Esq. | 07/31/2020 |

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729). | Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001.) |

Authorized for Local Reproduction
Previous Edition is not Usable
95-109

NSN 7540-00-634-4046

**STANDARD FORM 95** (REV. 2/2007)
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2

**INSURANCE COVERAGE**

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of the vehicle or property.

15. Do you carry accident Insurance? ☐ Yes  If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number. ☒ No

16. Have you filed a claim with your insurance carrier in this instance, and if so, is it full coverage or deductible? ☐ Yes ☒ No  17. If deductible, state amount.

18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim? (It is necessary that you ascertain these facts).

19. Do you carry public liability and property damage insurance? ☐ Yes  If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code). ☒ No

## INSTRUCTIONS

**Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident. If the incident involves more than one claimant, each claimant should submit a separate claim form.**

**Complete all items - Insert the word NONE where applicable.**

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY DAMAGES IN A **SUM CERTAIN** FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN **TWO YEARS** AFTER THE CLAIM ACCRUES.

**Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid. A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.**

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations. If more than one agency is involved, please state each agency.

The claim may be filled by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item number 12 of this form.

The amount claimed should be substantiated by competent evidence as follows:

(a) In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of the injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

(b) In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

(c) In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

(d) **Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.**

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
   A. *Authority:* The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B. *Principal Purpose:* The information requested is to be used in evaluating claims.
C. *Routine Use:* See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D. *Effect of Failure to Respond:* Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid."

## PAPERWORK REDUCTION ACT NOTICE

This notice is solely for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501. Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention: Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, DC  20530 or to the Office of Management and Budget. Do not mail completed form(s) to these addresses.

STANDARD FORM 95 REV. (2/2007) BACK

## **ATTACHMENT TO STANDARD FORM 95 FOR CLAIMANT UMAR GUIRA**

### **ITEM #8, Basis of Claim:**

From on or about September 30, 2018 and continuing up through and including October 2, 2018, infant claimant **UMAR GUIRA** and his then pregnant mother **ASSETA NANEMA** sought the medical care of **SANDY LAU BUI D.O.,** (an employee of the United States of America) for certain medical complaints, medical care, diagnosis, medical advice, procedures and treatment for complaints, signs, and symptoms from which they were suffering and **SANDY LAU BUI D.O.,** (an employee of the United States of America) rendered medical care, diagnosis, treatment and services.

During the subject pregnancy herein pertaining to **UMAR GUIRA**, infant claimant's mother was treated at medical and hospital facilities including the Charles B. Wang Community Health Center located at 268 Canal Street New York, New York 10013 for prenatal care and New York Presbyterian Hospital located at 170 Williams Street, New York, New York 10038 for the subject labor and delivery.

**UMAR GUIRA** was born at New York Presbyterian Hospital and delivered by **SANDY LAU BUI D.O.,** (an employee of the United States of America).

The medical care, diagnosis, treatment and services rendered to infant claimant **UMAR GUIRA** by **SANDY LAU BUI D.O.,** (an employee of the United States of America), was rendered careless, unskillfully, negligently, unnecessarily and not in accordance with good and accepted standards of medical care, and obstetrical/gynecology care including but not limited to: in negligently causing a right Brachial Plexus birth injury to infant **UMAR GUIRA**; in that negligent and wrongful acts and omissions by **SANDY LAU BUI D.O.,** (an employee of the United States of America), during the delivery of **UMAR GUIRA** on October 2, 2018 caused **UMAR GUIRA** to suffer from a permanent Erbs Palsy injury to his right upper extremity and shoulder and involving and including damage to the infant's right brachial plexus nerves; in negligently failing to timely and properly detect, diagnose, treat and address shoulder dystocia during delivery; in failing to timely and properly document onset shoulder dystocia;  in failing to timely and properly perform maneuvers to deliver **UMAR GUIRA** upon onset of shoulder dystocia; in failing to timely and properly perform maneuvers to deliver **UMAR GUIRA** so as to prevent an Erbs Palsy and Brachial Plexus injury;  in negligently failing to deliver the shoulders; in improperly delivering shoulders; in improperly delivering the infant's head; in  negligently delivering infant from birth canal; in failing to timely and properly perform  maneuvers in order to safely deliver infant from the birth canal;  in applying negligent traction to the infant's head;  in applying improper and contraindicated traction to head; in applying negligent lateral traction, in applying negligent downward traction, in applying unsafe and contraindicated traction;  in applying unsafe and contraindicated traction; in negligently manipulating shoulders, head and neck; in negligently applying pressure to head, shoulders and neck; in negligently manipulating head; in negligently positioning head; in negligently pulling head; in negligently pulling shoulders; in negligently applying improper force and traction to shoulders; in that excessive pressure/measures were used on newborn's head; in that force exerted in an effort to deliver infant was excessive; in using excessive force during delivery as is evidenced by severity of injuries; in causing permanent Erbs Palsy; in forcefully extracting newborn in a contraindicated manner; in failing to timely call for help

upon onset of shoulder dystocia; in causing shoulder dystocia; in failing to timely and properly employ and use HELPERR protocol; in failing to designate subject pregnancy as a high risk pregnancy; in negligently permitting a vaginal delivery to occur on infant claimant's date of birth; in negligently assessing fetal weight and size; in negligent addressing fetal weight; in failing to timely and properly recognize and address risks for shoulder dystocia; in failing to timely and properly address risks for Erbs Palsy; in failing to timely and properly recognize the increased the risk for erbs palsy and shoulder dystocia; in failing to recognize and address that prolonged labor increase risk for shoulder dystocia; in failing to timely and properly advise and educate infant claimant's mother as to the increased risk for shoulder dystocia; in failing to timely and properly assess pelvic anatomy; in failing to timely and properly call for assistance before delivery in light of increased risk for shoulder dystocia; in that **SANDY LAU BUI D.O.,** (an employee of the United States of America) negligently failed to properly obtain informed consent from infant claimant's mother; in that **SANDY LAU BUI D.O.,** (an employee of the United States of America) committed medical malpractice by failing to educate this infant's mother as to risks, benefits and alternatives as it pertains to a vaginal delivery vs. C section; in light of the increased risk for shoulder dystocia, a C section should have been performed; in negligently utilizing contraindicated medications; in failing to recognize earlier labor induction as treatment alternative; in negligently failing to obtain informed consent from the mother by means of failing to discuss increased risk for shoulder dystocia and by failing to timely and properly discuss option of C Section; in failing to perform a C Section on infant claimant's date of birth; in failing to arrange for performance of a C Section; in failing to alert key personnel prior to delivery as a precaution due to increased risk for shoulder dystocia; in that the nursing staff provided negligent care in regards to the labor and delivery and in regards to the treatment for shoulder dystocia including but not limited to negligent fundal pressure on the mother's stomach; in the absence of a disease process involving the brachial plexus like cancer or infection in the region of the brachial plexus that can directly injure the plexus, (both of which are absent here), permanent brachial plexus injury in the newborn can only occur when the brachial plexus is traumatically disrupted; in this case, the **UMAR GUIRA's** head was negligently moved a sufficient distance and/or with enough force by **SANDY LAU BUI D.O.,** (an employee of the United States of America) to cause the elongation of the subject nerves beyond their plastic limit causing a permanent injury brachial plexus nerve injury also known as an Erbs Palsy injury; in that the injury to the nerve of the brachial plexus indicates that nerves were exposed to a substantial degree of stretching by **SANDY LAU BUI D.O.,** an employee of the United States of America that was beyond their elastic limit; and that **SANDY LAU BUI D.O.,** an employee of the United States of America, was otherwise negligent, careless and departed from good and accepted medical and nursing practice.

As a result of all of the foregoing negligence and malpractice on part of defendants **SANDY LAU BUI D.O.,** (an employee of the United States of America) infant claimant **UMAR GUIRA** was caused to and did suffer and sustain severe and serious personal injuries that are permanent in nature and infant claimant was otherwise injured as a consequence of the subject Malpractice and Negligence.

As a result of all of the foregoing negligence and malpractice of **SANDY LAU BUI D.O.,** (an employee of the United States of America) the infant claimant was caused to and did suffer and sustain severe and serious conscious pain and suffering that are permanent in nature.

As a result of all of the foregoing negligence and malpractice of **SANDY LAU BUI D.O.,** (an employee of the United States of America), the Infant Plaintiff sustained

the injuries including but not limited to the following: Shoulder Dystocia; Permanent Erbs Palsy; Permanent Brachial Plexus Palsy Injury; Nerve injury; Cervical Nerves injury; injury to Right Upper Extremity; injury to Right Shoulder; impaired daily function due to loss of use of right upper extremity, right shoulder and right Erbs Palsy injury; Loss of/Decreased Function of Upper Right Extremity and Shoulder, Decreased range of motion; Decreased range of flexion; Discrepancy in length of upper extremities; Decreased abduction; Decreased strength; Decreased rotation; Permanent Nerve Damage;  Neurologic Disabilities;  Decreased ability to work in competitive work force;  Limitations/Restrictions to activities that require use of  Right Upper Extremity and Right Shoulder; physical deformity to right upper extremity and right shoulder; cosmetic deformity; an injury to the network of nerves that sends signals from the spine to the shoulder, arm and hand, known as the brachial plexus; Mental Anguish; Emotional Distress;  Depression; Occupational Therapy/Physical Therapy; Loss of Enjoyment of Life and potential need for Surgery including orthopedic surgery.

And further that all of the above injuries were accompanied by an extraordinary degree of conscious pain, suffering and mental anguish and entailed an extensive recuperative period spent in a hospital and/or at home. The aforementioned injuries and treatments resulted in further injury to the Infant Claimant's bodily functions and systems, with resultant pain, deformity, disability, stiffness, tenderness and loss, or possible loss, of the use of the above mentioned parts and has substantially prevented the Infant Claimant from enjoying the normal (social, family and recreational) activities customarily and previously enjoyed by the Infant Claimant. Moreover, Infant Claimant's enjoyment of life has been permanently impaired, impeded and reduced as a result of the negligence on the part of this respondent as a direct result of the injuries sustained by Infant Claimant.

As a result of all of the foregoing negligence and malpractice of **SANDY LAU BUI D.O.,** (an employee of the United States of America)  the infant claimant was caused to and will suffer future economic loss. Infant Claimant UMAR GUIRA is a young boy whose opportunities in the competitive job market will be restricted by the problems with his Right Erbs Palsy and right upper extremity related injuries.

**ASSETA NANEMA** also suffered injury as a consequence of this malpractice of  **SANDY LAU BUI D.O.**, (an employee of the United States of America) including Loss of Services, Society and Affection of her son, the infant claimant.  **ASSETA NANEMA**, is the lawful mother of infant claimant and in and as much is entitled to her society and is responsible for her care, maintenance, support and attention.

**ASSETA NANEMA**, being responsible for infant's necessaries, became obligated for that medical and hospital expense, and medicines and was deprived of the infant's society, and may continue to be further obligated and further damaged thereby.

As a result of the foregoing negligence and malpractice of defendants **SANDY LAU BUI D.O.** Plaintiff **ASSETA NANEMA** was deprived of the society of her son Umar Guira and was compelled to expend and become liable for diverse sums of money in an effect to cure and relieve her son of his injuries, and since her injuries are believed to be of a permanent nature, she will continue to be so deprived and liable in the future.

We are submitting these claims without the benefit of formal discovery. Claimants reserve the right to amend or supplement their claims.

13b. Phone Number and Person Signing Form:

Randolph Janis, Esq. of Douglas & London, P.C. (212) 566 7500

Email: rjanis@douglasandlondon.com

**ATTORNEY AUTHORIZATION**

TO:

HHS Office of the General Counsel
General Law Division/ATTN: Claims
330 C Street, S.W.
Switzer Building, Suite 2100
Washington, D.C. 20201

## AUTHORIZATION FOR ATTORNEY TO FILE FEDERAL TORT CLAIMS ACT CLAIMS ON BEHALF OF INFANT CLAIMANT UMAR GUIRA AND CLAIMANT ASSETA NANEMA (MOTHER AND NATURAL GUARDIAN OF UMAR GUIRA)

I, ASSETA NANEMA, (born March 24, 1988), am the mother and natural guardian of infant claimant UMAR GUIRA (born October 2, 2018) and I hereby designate and authorize our attorney, Randolph Janis, Esq., an attorney with the law firm of Douglas & London, P.C. to represent my son UMAR GUIRA and myself as claimants and to continue any and all claims and/or actions which have been filed or will be filed, on my son's behalf, my behalf and/or on behalf of both of us, arising from an incident that occurred on October 2, 2018 as described with more specificity as follows:

On October 2, 2018 at approximate 2:10 AM (per the hospital chart) my son UMAR GUIRA was born at New York Presbyterian Hospital located at 170 William Street New York, New York 10038. He was delivered by SANDY LAU BUI, D.O. It is alleged that the care provided by SANDY LAU BUI, D.O. during the labor and delivery admission from September 30, 2018 up to and inclusive of October 2, 2018 was careless, negligent and deviated from good and accepted medical practice resulting in my son sustaining Erbs Palsy, a brachial plexus nerve injury. Upon information and belief, Erbs Palsy occurred due to SANDY LAU BUI, D.O. negligently applying traction/force to my son UMAR GUIRA's head and body during his delivery resulting in a nerve injury to his brachial plexus nerves. It is believed that SANDY LAU BUI, D.O. was otherwise negligent, careless and deviated from good and accepted medical practice in regards to the subject labor and delivery.

ASSETA NANEMA (mother and natural guardian of UMAR GUIRA) on behalf of Infant Claimant UMAR GUIRA and individually as Claimant ASSETA NANEMA.

Sworn to before me
This 2 day of July, 2020

JOHN K COYLE
NOTARY PUBLIC-STATE OF NEW YORK
No. 01CO5046090
Qualified in Nassau County
My Commission Expires 07-03-20

NOTARY PUBLIC

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit to Appropriate Federal Agency: | 2. Name, address of claimant, and claimant's personal representative if any. (See instructions on reverse.) Number, Street, City, State and Zip code. |
|---|---|
| HHS Office of the General Counsel<br>General Law Division/ATTN Claims<br>330 C Street, S.W., Switzer Building, Suite 2100<br>Washington DC 20201 | Asseta Nanema<br>510 Jackson Avenue, 3F<br>Bronx NY 10455 |

| 3. TYPE OF EMPLOYMENT | 4. DATE OF BIRTH | 5. MARITAL STATUS | 6. DATE AND DAY OF ACCIDENT | | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|---|---|
| ☐ MILITARY ☒ CIVILIAN | 03/24/1988 | MOTHER | 10/02/2018 | Tuesday | Approx 2AM |

8. BASIS OF CLAIM (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary).

On October 2, 2018 at approximately 2:10 AM ASSETA NANEMA gave birth to her son UMAR GUIRA at New York Presbyterian Hospital located at 170 William Street New York, New York 10038. It is alleged that the care provided by SANDY LAU BUI, D.O. during the labor and delivery admission from September 30, 2018 up to and inclusive of October 2, 2018 was negligent and deviated from accepted medical practice resulting in UMAR GUIRA sustaining Erbs Palsy, a brachial plexus nerve injury deemed permanent in nature. The Erbs Palsy injury occurred due to said doctor using negligent force and traction to the head, neck, shoulders and body of the infant UMAR GUIRA during delivery of the infant. See attached page entitled "#8 Further Detail".

| 9. | PROPERTY DAMAGE |
|---|---|

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

NONE NO PROPERTY DAMAGE

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF THE DAMAGE AND THE LOCATION OF WHERE THE PROPERTY MAY BE INSPECTED. (See instructions on reverse side).

NONE NO PROPERTY DAMAGE

| 10. | PERSONAL INJURY/WRONGFUL DEATH |
|---|---|

STATE THE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE THE NAME OF THE INJURED PERSON OR DECEDENT.

Due to the malpractice of SANDY LAU BUI, D.O., UMAR GUIRA was caused to sustain a permanent Erbs Palsy injury to his brachial plexus. Asseta Nanema, the infant's mother, suffered damages due to injuries sustained by her son including being responsible for medical and hospital expenses and from being deprived Society of her son and Loss of Services and Affection of her son. See also Attachment to Standard Form 25.

| 11. | WITNESSES |
|---|---|

| NAME | ADDRESS (Number, Street, City, State, and Zip Code) |
|---|---|
| HAMIDOU GUIRA | 510 Jackson Avenue 3F Bronx NY 10455 |

| 12. (See instructions on reverse). | AMOUNT OF CLAIM (in dollars) | | | |
|---|---|---|---|---|
| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights). | |
| NONE | 250,000.00 | NONE | 250.000.00 | |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side). | 13b. PHONE NUMBER OF PERSON SIGNING FORM | 14. DATE OF SIGNATURE |
|---|---|---|
| | 212 566 7500 Randolph Janis, Esq. | 07/31/2020 |

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729). | Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001.) |

| Authorized for Local Reproduction<br>Previous Edition is not Usable<br>95-109 | NSN 7540-00-634-4046 | STANDARD FORM 95 (REV. 2/2007)<br>PRESCRIBED BY DEPT. OF JUSTICE<br>28 CFR 14.2 |
|---|---|---|

**INSURANCE COVERAGE**

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of the vehicle or property.

15. Do you carry accident Insurance? ☐ Yes    If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number. ☒ No

16. Have you filed a claim with your insurance carrier in this instance, and if so, is it full coverage or deductible? ☐ Yes ☒ No    17. If deductible, state amount.

18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim? (It is necessary that you ascertain these facts).

19. Do you carry public liability and property damage insurance? ☐ Yes    If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code). ☒ No

## INSTRUCTIONS

Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident.  If the incident involves more than one claimant, each claimant should submit a separate claim form.

### Complete all items - Insert the word NONE where applicable.

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY

**Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid.  A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.**

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted.  Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14.  Many agencies have published supplementing regulations.  If more than one agency is involved, please state each agency.

The claim may be filled by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant.  A claim presented by an agent or legal representative must be presented in the name of the claimant.  If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item number 12 of this form.

DAMAGES IN A **SUM CERTAIN** FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN **TWO YEARS** AFTER THE CLAIM ACCRUES.

The amount claimed should be substantiated by competent evidence as follows:

*(a)* In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of the injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

*(b)* In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

*(c)* In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident.  Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

*(d)* **Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.**

### PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
   A. *Authority:*  The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

   B. *Principal Purpose:*  The information requested is to be used in evaluating claims.
   C. *Routine Use:*  See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
   D. *Effect of Failure to Respond:*  Disclosure is voluntary.  However, failure to supply the requested information or to execute the form may render your claim "invalid."

### PAPERWORK REDUCTION ACT NOTICE

This notice is solely for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501.  Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.  Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention: Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, DC 20530 or to the Office of Management and Budget.  Do not mail completed form(s) to these addresses.

**STANDARD FORM 95** REV. (2/2007) **BACK**

## **ATTACHMENT TO STANDARD FORM 95 FOR CLAIMANT ASSETA NANEMA**

### **ITEM #8, Basis of Claim:**

From on or about September 30, 2018 and continuing up through and including October 2, 2018, infant claimant **UMAR GUIRA** and his then pregnant mother **ASSETA NANEMA** sought the medical care of **SANDY LAU BUI D.O.,** (an employee of the United States of America) for certain medical complaints, medical care, diagnosis, medical advice, procedures and treatment for complaints, signs, and symptoms from which they were suffering and **SANDY LAU BUI D.O.,** (an employee of the United States of America) rendered medical care, diagnosis, treatment and services.

During the subject pregnancy herein pertaining to **UMAR GUIRA**, infant claimant's mother was treated at medical and hospital facilities including the Charles B. Wang Community Health Center located at 268 Canal Street New York, New York 10013 for prenatal care and New York Presbyterian Hospital located at 170 Williams Street, New York, New York 10038 for the subject labor and delivery.

**UMAR GUIRA** was born at New York Presbyterian Hospital and delivered by **SANDY LAU BUI D.O.,** (an employee of the United States of America).

The medical care, diagnosis, treatment and services rendered to infant claimant **UMAR GUIRA** by **SANDY LAU BUI D.O.,** (an employee of the United States of America), was rendered careless, unskillfully, negligently, unnecessarily and not in accordance with good and accepted standards of medical care, and obstetrical/gynecology care including but not limited to: in negligently causing a right Brachial Plexus birth injury to infant **UMAR GUIRA**; in that negligent and wrongful acts and omissions by **SANDY LAU BUI D.O.,** (an employee of the United States of America), during the delivery of **UMAR GUIRA** on October 2, 2018 caused **UMAR GUIRA** to suffer from a permanent Erbs Palsy injury to his right upper extremity and shoulder and involving and including damage to the infant's right brachial plexus nerves; in negligently failing to timely and properly detect, diagnose, treat and address shoulder dystocia during delivery; in failing to timely and properly document onset shoulder dystocia;  in failing to timely and properly perform maneuvers to deliver **UMAR GUIRA** upon onset of shoulder dystocia; in failing to timely and properly perform maneuvers to deliver **UMAR GUIRA** so as to prevent an Erbs Palsy and Brachial Plexus injury;  in negligently failing to deliver the shoulders; in improperly delivering shoulders; in improperly delivering the infant's head; in  negligently delivering infant from birth canal; in failing to timely and properly perform  maneuvers in order to safely deliver infant from the birth canal;   in applying negligent traction to the infant's head; in applying improper and contraindicated traction to head; in applying negligent lateral traction, in applying negligent downward traction, in applying unsafe and contraindicated traction;  in applying unsafe and contraindicated traction; in negligently manipulating shoulders, head and neck; in negligently applying pressure to head, shoulders and neck; in negligently manipulating head; in negligently positioning head; in negligently pulling head; in negligently pulling shoulders; in negligently applying improper force and traction to shoulders; in that excessive pressure/measures were used on newborn's head; in that force exerted in an effort to deliver infant was excessive; in using excessive force during delivery as is evidenced by severity of injuries; in causing permanent Erbs

Palsy; in forcefully extracting newborn in a contraindicated manner; in failing to timely call for help upon onset of shoulder dystocia; in causing shoulder dystocia; in failing to timely and properly employ and use HELPERR protocol; in failing to designate subject pregnancy as a high risk pregnancy; in negligently permitting a vaginal delivery to occur on infant claimant's date of birth; in negligently assessing fetal weight and size; in negligent addressing fetal weight; in failing to timely and properly recognize and address risks for shoulder dystocia; in failing to timely and properly address risks for Erbs Palsy; in failing to timely and properly recognize the increased the risk for erbs palsy and shoulder dystocia; in failing to recognize and address that prolonged labor increase risk for shoulder dystocia; in failing to timely and properly advise and educate infant claimant's mother as to the increased risk for shoulder dystocia; in failing to timely and properly assess pelvic anatomy; in failing to timely and properly call for assistance before delivery in light of increased risk for shoulder dystocia; in that **SANDY LAU BUI D.O.,** (an employee of the United States of America) negligently failed to properly obtain informed consent from infant claimant's mother; in that **SANDY LAU BUI D.O.,** (an employee of the United States of America) committed medical malpractice by failing to educate this infant's mother as to risks, benefits and alternatives as it pertains to a vaginal delivery vs. C section; in light of the increased risk for shoulder dystocia, a C section should have been performed; in negligently utilizing contraindicated medications; in failing to recognize earlier labor induction as treatment alternative; in negligently failing to obtain informed consent from the mother by means of failing to discuss increased risk for shoulder dystocia and by failing to timely and properly discuss option of C Section; in failing to perform a C Section on infant claimant's date of birth; in failing to arrange for performance of a C Section; in failing to alert key personnel prior to delivery as a precaution due to increased risk for shoulder dystocia; in that the nursing staff provided negligent care in regards to the labor and delivery and in regards to the treatment for shoulder dystocia including but not limited to negligent fundal pressure on the mother's stomach; in the absence of a disease process involving the brachial plexus like cancer or infection in the region of the brachial plexus that can directly injure the plexus, (both of which are absent here), permanent brachial plexus injury in the newborn can only occur when the brachial plexus is traumatically disrupted; in this case, the **UMAR GUIRA's** head was negligently moved a sufficient distance and/or with enough force by **SANDY LAU BUI D.O.,** (an employee of the United States of America) to cause the elongation of the subject nerves beyond their plastic limit causing a permanent injury brachial plexus nerve injury also known as an Erbs Palsy injury; in that the injury to the nerve of the brachial plexus indicates that nerves were exposed to a substantial degree of stretching by **SANDY LAU BUI D.O.,** an employee of the United States of America that was beyond their elastic limit; and that **SANDY LAU BUI D.O.,** an employee of the United States of America, was otherwise negligent, careless and departed from good and accepted medical and nursing practice.

As a result of all of the foregoing negligence and malpractice on part of defendants **SANDY LAU BUI D.O.,** (an employee of the United States of America) infant claimant **UMAR GUIRA** was caused to and did suffer and sustain severe and serious personal injuries that are permanent in nature and infant claimant was otherwise injured as a consequence of the subject Malpractice and Negligence.

As a result of all of the foregoing negligence and malpractice of **SANDY LAU BUI D.O.,** (an employee of the United States of America) the infant claimant was caused to and did suffer and sustain severe and serious conscious pain and suffering that are permanent in nature.

As a result of all of the foregoing negligence and malpractice of **SANDY LAU BUI D.O.,** (an employee of the United States of America), the Infant Plaintiff sustained the injuries including but not limited to the following: Shoulder Dystocia; Permanent Erbs Palsy; Permanent Brachial Plexus Palsy Injury; Nerve injury; Cervical Nerves injury; injury to Right Upper Extremity; injury to Right Shoulder; impaired daily function due to loss of use of right upper extremity, right shoulder and right Erbs Palsy injury; Loss of/Decreased Function of Upper Right Extremity and Shoulder, Decreased range of motion; Decreased range of flexion; Discrepancy in length of upper extremities; Decreased abduction; Decreased strength; Decreased rotation; Permanent Nerve Damage; Neurologic Disabilities; Decreased ability to work in competitive work force; Limitations/Restrictions to activities that require use of Right Upper Extremity and Right Shoulder; physical deformity to right upper extremity and right shoulder; cosmetic deformity; an injury to the network of nerves that sends signals from the spine to the shoulder, arm and hand, known as the brachial plexus; Mental Anguish; Emotional Distress; Depression; Occupational Therapy/Physical Therapy; Loss of Enjoyment of Life and potential need for Surgery including orthopedic surgery.

And further that all of the above injuries were accompanied by an extraordinary degree of conscious pain, suffering and mental anguish and entailed an extensive recuperative period spent in a hospital and/or at home. The aforementioned injuries and treatments resulted in further injury to the Infant Claimant's bodily functions and systems, with resultant pain, deformity, disability, stiffness, tenderness and loss, or possible loss, of the use of the above mentioned parts and has substantially prevented the Infant Claimant from enjoying the normal (social, family and recreational) activities customarily and previously enjoyed by the Infant Claimant. Moreover, Infant Claimant's enjoyment of life has been permanently impaired, impeded and reduced as a result of the negligence on the part of this respondent as a direct result of the injuries sustained by Infant Claimant.

As a result of all of the foregoing negligence and malpractice of **SANDY LAU BUI D.O.,** (an employee of the United States of America) the infant claimant was caused to and will suffer future economic loss. Infant Claimant UMAR GUIRA is a young boy whose opportunities in the competitive job market will be restricted by the problems with his Right Erbs Palsy and right upper extremity related injuries.

   **ASSETA NANEMA** also suffered injury as a consequence of this malpractice of **SANDY LAU BUI D.O.**, (an employee of the United States of America) including Loss of Services, Society and Affection of her son, the infant claimant. **ASSETA NANEMA**, is the lawful mother of infant claimant and in and as much is entitled to her society and is responsible for her care, maintenance, support and attention.

   **ASSETA NANEMA**, being responsible for infant's necessaries, became obligated for that medical and hospital expense, and medicines and was deprived of the infant's society, and may continue to be further obligated and further damaged thereby.

   As a result of the foregoing negligence and malpractice of defendants **SANDY LAU BUI D.O.** Plaintiff **ASSETA NANEMA** was deprived of the society of her son Umar Guira and was compelled to expend and become liable for diverse sums of money in an effect to cure and relieve her son of his injuries, and since her injuries are believed to be of a permanent nature, she will continue to be so deprived and liable in the future.

We are submitting these claims without the benefit of formal discovery. Claimants reserve the right to amend or supplement their claims.

13b. Phone Number and Person Signing Form:

Randolph Janis, Esq. of Douglas & London, P.C. (212) 566 7500

Email: rjanis@douglasandlondon.com



HOME MAIL NEWS FINANCE SPORTS ENTERTAINMENT LIFE MORE

Find messages, documents, photos or people

Randy home

Compose

← Back Archive Move Delete Spam •••

Inbox 999+
Unread
Starred
Drafts 518
Sent
Archive
Spam
Trash
Less

Views Hide
Photos
Documents
Subscriptions
Deals
Receipts
Groceries
Travel

Folders Hide
+ New Folder
Notes
NYSTLA
NYTRIAL
Sent Messa...

**From:** Mailbox - HHS Claims (OS/OGC) <hhs-ftca-claims@hhs.gov>
**Sent:** Wednesday, July 01, 2020 11:52 AM
**To:** Randy Janis <rjanis@douglasandlondon.com>
**Cc:** Torres Bruckheim, Meredith (HHS/OGC) <Meredith.Torres@HHS.GOV>
**Subject:** RE: FTCA

Dear Sir: The mailing address below is the correct address to mail or email your SF-95. Please include the full name of the minor child.

*Ms. Meredith Torres, JD, M.Ed.*

Senior Agency Attorney

U.S. Department of Health and Human Services

Office of the General Counsel, General Law Division

Claims and Employment Law Branch

330 C Street, S.W., Switzer Building, Suite 2100

Washington, D.C. 20201

Office Phone: (202) 691-2367

Fax: (202) 619-2922

Email: meredith.torres@hhs.gov

EMAIL for General FTCA Claims: HHS-FTCA-CLAIMS@hhs.gov

*Notice: The contents of this message and any attachments may be privileged and confidential. Please do not disseminate without the approval of the sender. If you are not an intended recipient, or have received this message in error, please delete and notify meredith.torres@hhs.gov that you have received this communication in error. Please do not print, copy, forward, disseminate, or otherwise use the information without approval from the sender. Your receipt of this message is not intended to waive any applicable privileges.*

# EXHIBIT B



**Douglas & London**

59 Maiden Lane, 6th Floor
New York, NY 10038

Phone: (212) 566-7500
Fax: (212) 566-7501

Gary J. Douglas\*
Michael A. London\*
Stephanie O'Connor\*
Randolph D. Janis
_____
Virginia E. Anello^
Rebecca C. Newman\*
Robin J. Bond\*
Lara J. Say\*ᴾ
Alicia Ellsayed
Diana Yastrovskaya
Jennifer Mittasch
Tate J. Kunkleᵗ
Anne E. Accettella
Michael D. Sharpᶠ

\* Also admitted in NJ
ᴾ Also admitted in PA
^ Also admitted in LA & MA
ᴾ Also admitted in NC
ᵗ Also admitted in CT
ᶻ Of Counsel

*The attorney in charge of New Jersey
practice is Michael A. London*

October 19, 2020

Charlene.Robinson@hhs.gov
HHS Office of the General Counsel
General Law Division/ATTN: Claims
330 C Street, S.W.
Switzer Building, Suite 2100
Washington, D.C. 20201

Re:    Administrative Tort Claim of Umar Guira, a minor, Claim No.: 2020-1321

        Administrative Tort Claim of Asseta Nanema, Claim No.: 2020-1332

Dear Ms. Robinson:

Thank you for your letter dated September 22, 2020. I responded on October 1, 2020.

Please accept this letter as a supplemental response to your September 22, 2020 letter.

I've attached the Report of Daniel Adler, M.D. a Board Certified Pediatric Neurologist who examined the infant Umar Guira on October 12, 2020.

Very truly yours,
**DOUGLAS & LONDON, P.C.**

Randolph Janis

# Daniel Adler, MD, L.L.C.

Specializing in Pediatric Neurology

119 West 57ᵗʰStreet ∘ Suite 600 ∘ New York, NY 10019
Tel: 201.894.1551 ∘ Fax: 212. 504.8100 ∘ drdanadler@cs.com

October 19, 2020

Randolph D. Janis, Esquire
Douglas & London
59 Maiden Lane
The Sixth Floor
New York, NY 10038

RE: **GUIRA, UMAR**

Dear Mr. Janis:

I saw Umar Guira in pediatric neurological consultation on October 12, 2020. Umar's date of birth is October 2, 2018. He is now 2 years of age. His mother is Asseta Nanema. She brought Umar to the office. Prior to seeing Umar, I had an opportunity to review medical records. These medical records indicate that Umar weighed 3,570 grams at his birth. His Apgar scores were 7 and 8 at one and five minutes respectively. The delivery note indicates that he was positioned in the right occiput posterior position and specifically says, "Shoulders and body delivered atraumatically." Umar's birth occurred at 38-39 weeks gestation.

After delivery, it was noted that Umar's right arm was weak. His grasp was weak as well. There was evidence of bruising in the right arm. X-rays revealed no bony abnormalities and no fractures. Umar did not improve prior to discharge. The diagnosis was Erb's palsy.

After delivery, Umar Guira saw pediatric neurologists at Weill Cornel Medical Center. The first visit occurred when he was 10 days of age. At that time, Umar was being evaluation for early intervention. The examination revealed weakness of the right upper extremity. There was slight weakness in the right hand. According to the pediatric neurologist, the arm was in the "classic Erb palsy posture."

Umar received care and treatment from Bright Start Physical Therapy. When Umar was 6 months of age, they noted improvement. At that time, Umar was able to actively externally rotate his arm and supinate his forearm.

Umar's mother told me that he has not seen doctors who specialize in the care and treatment of brachial plexus injury. She told me that he did receive various therapies through

PATIENT:   **GUIRA, UMAR**
DATE:      October 19, 2020
PAGE:      Two

an early intervention. There was a short hiatus because of COVID-19. She told me that she will be initiating therapy again soon.

Umar is a boy who walked by 1 year of age. He is beginning to speak words in English and in French, which is a language spoken in the house. Umar has no other healthcare concerns.

The general physical examination reveals a pulse of 100 and respirations of 20. There are no skin lesions of neurological significance. The head, ears, eyes, nose, and throat are negative. The neck is supple. The thyroid gland is not enlarged. The heart and lungs are unremarkable. The back is straight. The right arm is held with the shoulder depressed and internally rotated. The elbow is flexed and the hand is pronated. There is scapula winging on the right. There is a positive trumpet sign at 90 degrees on the right. Measurements of both upper extremities could not be performed. By appearance, the right is shorter than the left arm.

I measured passive range of motion. I produced the passive movements. The results are in the following chart:

| **Passive Range of Motion** | **Right Upper Extremity** | **Left Upper Extremity** |
|---|---|---|
| Shoulder flexion | 170 degrees | 180 degrees |
| Shoulder extension | 45 degrees | 60 degrees |
| Shoulder horizontal abduct. | 150 degrees | 180 degrees |
| Shoulder external rotation | 75 degrees | 90 degrees |
| Shoulder internal rotation | 45 degrees | 60 degrees |
| Elbow flexion/extension | 150 degrees/10 degrees | 150 degrees/0 degrees |
| Forearm supination | 0-180 degrees | 0-180 degrees |
| Forearm pronation | 0-180 degrees | 0-180 degrees |
| Wrist extension | 0-90 degrees | 0-90 degrees |
| Wrist Flexion | 0-90 degrees | 0-90 degrees |
| Finger flexion/extension | Normal | Normal |

The neurological examination revealed a boy who was friendly and cooperative. I did not hear him speak in sentences. There is symmetrical movement of the face and tongue. Extraocular movements are full. There is no Horner's syndrome. Muscle tone is decreased. Due to his age, Umar was not able to cooperate fully for active range of motion testing. It was clear the movements of the right arm are abnormal. He does not fully elevate that arm above his head. He cannot fully straighten that elbow actively. He does not supinate the right forearm. Finger and thumb movements appear normal. There are no

PATIENT: **GUIRA, UMAR**
DATE: October 19, 2020
PAGE: Two

reflexes in the right arm.  Reflexes in the left arm are 1+.  Reflexes in the legs are 1+.
Umar has a normal gait for his age.  Manual muscle testing was not performed.

**CLINICAL IMPRESSION**: 1.    Brachial plexus injury involving the 5th and 6th
cervical nerves on the right with incomplete recovery.
2.    Shoulder contracture, right.
3.    Elbow contracture, right.

**FORMULATION**: Umar Guira is a boy with permanent neurological disabilities as a
result of a neonatal brachial plexus injury involving the right arm. My examination
demonstrated a pattern of abnormalities that indicates the fifth and sixth cervical nerves
have been injured.

Because of his permanent neonatal brachial plexus injury, Umar Guira will require physical and occupational therapies until he reaches the age of skeletal maturity. Skeletal maturity typically occurs in males by 18 years of age but can be delayed until their 21st year
of life.

Because of his permanent neonatal brachial plexus injury, Umar Guira has one of the typical orthopedic consequences of a permanent brachial plexus injury, an internal rotation
contracture of the right shoulder. This condition can often require extensive treatment,
which can include multiple surgeries and injections of botulinum toxin.

There is an elbow contracture of the right elbow.  This condition can also often require
extensive treatment.

While these additional treatments may allow Umar Guira to function better, his ability to
perform certain activities of daily living will still be limited. His inability to internally
rotate his right shoulder will affect activities such as washing and dressing. For example,
it will be difficult for Umar Guira to pull up or button his pants, tie his shoes or comb his
hair.

Later in life, Umar Guira's opportunities in the competitive job market will be restricted
by the problems with his arm. "Blue collar" types of jobs may be impossible to perform
for a person like Umar Guira who has a permanent disability involving an arm. For example, any job that requires heavy lifting and carrying, or elevation of the arms above the
head will be impossible. Sustained bimanual tasks will be impossible. Additional therapy
and surgery will not change his employability.

PATIENT:   **GUIRA, UMAR**
DATE:      October 19, 2020
PAGE:      Three

There is already a discrepancy in the length between the left and right arms As Umar Guira grows and matures and enters puberty, there will be a discrepancy approaching 10% in length between the affected right and left arm. This will create a significant cosmetic deformity.

With respect to causation, neurological textbooks and literature outline the potential causes of permanent neonatal brachial plexus injury. There are medical conditions such cancer or infection that can directly injure the nerves that comprise the plexus. When underlying medical conditions are excluded, the cause of permanent neonatal brachial plexus injury to the right arm present at delivery is traumatic tearing of nerves. This tearing occurs as a result of a forceful stretch of those nerves beyond the point of structural failure (plastic limit) as the head of the baby is moving laterally or rotates away from the right arm.

In this case, where the aforementioned medical conditions are not defined in the medical records, the permanent brachial plexus injury in the right arm suffered by Umar Guira was caused by traumatic tearing of the nerves of the brachial plexus.

Rarely, the stretching of the nerves of neonatal brachial plexus injury can be exaggerated when the fetus has muscle atrophy in the head and neck or suffers intrapartum hypoxia sufficient to cause fetal hypotonia and acidosis. Umar Guira had none of these conditions.

It is my medical opinion the degree of forceful stretch of the nerves required to produce the traumatic neonatal brachial plexus injury seen in this case occurred after the head of Umar Guira was delivered during the movement of the head away from the injured right arm created by the obstetrician.

It has been argued by some that permanent traumatic neonatal brachial plexus injury occurs with movement of the fetal head created by the forces of uterine contraction along with the mother pushing during labor and before any physician efforts to deliver the fetus.

It is my medical opinion the maternal forces of labor have never been proven to be the cause of a permanent neonatal brachial plexus when the fetus does not have exaggerated risk of nerve stretch. Experimental studies performed on neonatal nerves suggest the force required to physically disrupt the fifth cervical nerve is at least 44 to 88 lbs. Experimental studies suggest the forces of labor do not reach these levels and therefore do not cause permanent brachial plexus. In fact, the actual forces of labor were not measured in this case.

PATIENT:    **GUIRA, UMAR**
DATE:       October 19, 2020
PAGE:       Four

When the injured shoulder is not positioned anteriorly under the pubic bone but located posteriorly as in this case, some will argue this is proof the brachial plexus injury must have occurred on an intrauterine basis. This is because the direction the fetal head is moved by the obstetrician to facilitate delivery of the fetal body is typically down. In this case, neither the directional movement of the fetal head nor the angle of head movement off axis created by the operator are described in the medical records.

It is therefore my medical opinion that the fetal head in this case was moved in an upward direction by the obstetrician after it delivered. Upward movement of the fetal head do occur during the efforts to deliver the fetal body. Ankumah and others wrote that after emergence of the fetal head there is "manipulation of the head downward, upward, and possibly laterally; traction utilized."

It is also my medical opinion that traumatic injury to Umar Guira's brachial plexus could therefore have been avoided if the delivery could have been accomplished by the obstetrician with little to no movement of the head, thus limiting the amount of forceful stretch of the nerve roots.

All of the aforementioned disabilities, limitations and special needs are a direct result of Umar Guira's brachial plexus injury and the resulting permanent and continuing neurological injuries. All of the treatment provided to Umar Guira as a result of these permanent and continuing neurological disabilities has been medically necessary and appropriate.

PATIENT:   **GUIRA, UMAR**
DATE:      October 19, 2020
PAGE:      Five


I reserve the right to amend, modify, or otherwise supplement my opinions should addi-
tional material become available or there is a change in circumstances.

These opinions are provided with a reasonable degree of medical probability.

Sincerely yours,

Daniel Adler, M.D.

Allen, RH On the Mechanical Aspects of Shoulder Dystocia and Birth Injury *Clinical Obstetrics & Gyne-
cology* 50:607-623 (2007)
Chauhan, S. P. et al, A multi-center assessment of 1,177 cases of shoulder dystocia: lessons learned, *Amer-
ican Journal of Perinatology* 31:401-406 (2014)
Crofts, JF et al. Prevention of brachial plexus injury: 12 years of shoulder dystocia training and uninter-
rupted time series study *British Journal of Obstetrics and Gynecology* 123: 111-118 (2016).
*Nerve and Nerve Injuries*, Second Edition (1978), edited by Sir Sydney Sunderland.
*Swaiman's Pediatric Neurology* (Sixth Edition), edited by Kenneth F. Swaiman, MD and others (2017).
Bae, DS et al. Upper extremity size differences in Brachial Plexus Birth Palsy *Hand* 3:297-303 (2008)
Gonik, B. et al Shoulder dystocia recognition: Differences in neonatal risks for injury. *American Journal of
Perinatology* 8:31-34 (1991)
Gurewitsch, E.D. at el al:  Risk Factors for Brachial Plexus Injury with and Without Shoulder Dystocia,
*American Journal of Obstetrics and Gynecology*; 194: 486-92 (2006)
Ankumah, N.E. et al, Angles, Traction and Time after Delivery of Fetal Head: Intraobserver Variation of
Novel Visual Analogs, *American Journal of Perinatology*, 34: 1424-1429 (2017)

## Daniel Adler, M.D., L.L.C.

Specializing in Pediatric Neurology

25 Rockwood Place ∘ Suite 110 ∘ Englewood, New Jersey 07631
Tel: 201.894.1551 ∘ Fax: 212.504.8100 ∘ drdanadler@cs.com

# CURRICULUM VITAE

## EDUCATION

- State University of New York at Buffalo, Phi Beta Kappa           BA 1972
- Albert Einstein College of Medicine, Alpha Omega Alpha           MD 1975

## POST GRADUATE TRAINING

- Pediatrics Babies Hospital, Columbia Presbyterian Medical Center    1975-1977
- Child Neurology Albert Einstein College of Medicine                 1977-1980
- Neuromuscular Disease Fellowship                                    1980-1981
  Albert Einstein College of Medicine

## RESEARCH EXPERIENCE

Co-Investigator for the Ancrod Protocol - *Stroke Treatment with Ancrod Trial (S\*T\*A\*T)* in conjunction with Knoll Pharmaceutical Company

Co-Investigator for Lubeluzole - *Effects of Intravenous Therapy in Subjects with Acute Ischemic Stroke, a Placebo-controlled, Double-blind, Randomized, Multicenter Trial in* conjunction with Janssen Research Foundation

Co-Investigator for Lubeluzole - *Lubeluzole in Acute Ischemic Stroke Treatment a Double-blind Study with an 8-hour Inclusion Window Comparing a 10mg Dose of Lubeluzole with Placebo in* conjunction with Janssen Research Foundation

Co-Investigator for *Citicoline Protocol #IP 302-007, A Placebo-controlled Study to Determine the Effects of 500mg Citicoline in Ischemic Stroke Patients* in conjunction with Interneuron Pharmaceuticals, Inc.

Co-Investigator for *SB 202026/045 A 24-week, Double-blind, Placebo-controlled, Parallel Group, Fixed-dose Study of the Efficacy and Tolerability of SB 202026 25ug bid. and SB 202026 50ug od. in Patients Suffering From Dementia of the Probable Alzheimer's Type* in conjunction with SmithKline Beecham Pharmaceuticals Clinical Research and Development

Co-Investigator for *SB 202026/050 An Open Extension Study of the Long Term Safety and Efficacy of 25ug and 50ug SB 202026 bid in Patients Suffering from Dementia of the Probable Alzheimer's Type* in conjunction

Page 2

with SmithKline Beecham Pharmaceuticals Clinical Research and
Development

Co-Investigator for *Phase 2 Study of Hu23F2G in Acute Exacerbations
of Multiple Sclerosis* sponsored by ICOS Corporation

Co-Investigator for *A Randomized, Double-Blind, Placebo-Controlled Parallel-Group
Multicenter Trial of Two Doses of Fiblast® (Trafermin) in Patients with Acute Stroke*
in conjunction with Wyeth-Ayerst Research

Co-Investigator for *Morphine Sulfate With Dextromethorphan Hydrobromide*
in conjunction with Algos Pharmaceutical Corporation

Co-Investigator for *The Clomethiazole Acute Stroke Study in Acute Intracerebral
Hemorrhage (CLASS-H): A double blind, parallel group, multinational,
multicenter study of the safety of i.v. Clomethiazole compared to placebo in patients
with acute intracerebral hemorrhage* in conjunction with Astra USA Inc.

Co- Investigator for *The Clomethiazole Acute Stroke Study in Ischemic Stroke
(CLASS-I): A double blind, parallel group, multinational, multicenter study of the
efficacy and safety of i.v. Clomethiazole compared to placeboin patients with acute
ischemic stroke* in conjunction with Astra USA Inc.

Co-Investigator for *The Clomethiazole Acute Stroke Study in t-PA Treated
Ischemic Stroke (CLASS-T): A double blind, parallel group, multinational,
multicenter study of the safety of i.v. Clomethiazole compared to placebo in
patients treated with t-PA (tissue plasminogen activator) for acute ischemic stroke*
in conjunction with Astra USA Inc.

Co-Investigator for *Topamax® (Topiramate) Monotherapy Comparison
Trial to Standard Monotherapy in the Treatment of Newly Diagnosed Epilepsy*
in conjunction with Ortho-McNeil Pharmaceutical

Co-Investigator for *A Double Blind Randomized, Placebo Controlled
Multicenter Study to Evaluate the Efficacy and Safety of 4 Doses of Intramuscular
Phenoxybenzamine Hydrochloride Injection versus Placebo in Chronic Muscle Pain*
sponsored by Berlex Laboratories

Co-Investigator for *Galantamine in the treatment of Alzheimer's Disease:
Flexible dose range trial* sponsored by Janssen Research Foundation

Co-Investigator for *A prospective, randomized, parallel group, double-blind,*

Page 3

*placebo-controlled, multi-center study to evaluate the short-term efficacy and safety of entacapone administered together with levodopa in subjects with Parkinson's Disease without motor fluctuations* sponsored by Novartis

Co-Investigator for *A Phase III Multicenter, Double Blind, Parallel-Group Controlled Study of the Effect of Riluzole 50 mg BID or 100 mg BID on the Progression of Parkinson's Disease for Two Years in 1050 Patients* sponsored by Rhone-Poulenc Rorer

Co-Investigator for *A Multicenter, Randomized, Double-Blind, Parallel Groups Study of Morphelan™ (morphine sulfate oral extended release capsules) In Patients with Chronic, Moderate to Severe Pain* sponsored by Targon Corporation

Co-Investigator for *Pregabalin BID Add-On Trial: A Randomized, Double-Blind, Placebo-Controlled, Parallel Group, Multicenter Study in Patients With Partial Seizures* sponsored by Parke-Davis Pharmaceutical Research

Co-Investigator for *Pregabalin BID Open-Label Add-On Trial: An Open Label, Multicenter Follow-On Study to Determine Long-Term Safety and Efficacy In Patients With Partial Seizures* sponsored by Parke-Davis Pharmaceutical Research

Co-Investigator for *Safety and Tolerability of Long-Term Administration Of Dilaudid® SR (Hydromorphone HCl)* sponsored by Knoll Pharmaceutical Company

Principal Investigator for *A One-Year Open-Label Safety Trial of d-threo-Methylphenidate Hydrocholoride (d-*MPH*) in Children with Symptoms of Attention Deficit Hyperactivity Disorder (ADHD)* sponsored by Celgene Corporation

Principal Investigator for *A Six-month Open-Label Safety Trial of d-threo-*Methylphenidate Hydrocholoride (*d-*MPH*) in Children with Symptoms of Attention Deficit Hyperactivity Disorder (ADHD)* sponsored by Celgene Corporation

Co-Investigator for *A Repeated-Dose Evaluation of Analgesic Use and Safety of Dilaudid® SR (Hydromorphone HCl) in Patients with Chronic Cancer Pain* sponsored by Knoll Pharmaceutical Company

Co-Investigator for *A Double-Blind, Randomized, Placebo-Controlled Study of Atorvastatin as Prevention of Cerebrovascular Events in Patients*

Page 4

*With A Previous Transient Ischemic Attack (TIA) or Stroke* sponsored by
Parke-Davis Pharmaceutical Research

Co-Investigator for GAIN Americas, *An International, Multi-Center,
Randomized, Double-Blind, Placebo-Controlled, Parallel-Group Study to*
Assess the Safety, Efficacy and Pharmacoeconomics of an 800 mg Loading
*Dose and Five 200 mg Maintenance doses of GV150526 in the Treatment
of Patients with a Clinical Diagnosis of Acute Stroke* sponsored by Glaxo
Wellcome.

Co-Investigator for the Lotrafiban-BRAVO study, *Blockade of the
GP IIB/IIIA Receptor to Avoid Vascular Occlusion*, sponsored by SmithKline
Beecham Pharmaceuticals

Co-Investigator for USMAP, *The U. S. Migraine Assessment Protocol,
a four Multi-center, Randomized, Placebo-controlled trial to study real world
experiences among migraine patients who are treated with Maxalt® or
Maxalt-MLT™ over 2 migraine attacks*, sponsored by Merck & Co. Inc.

Co-Investigator for *A Phase III Multi-center, Double-Blind, Parallel-
Group Placebo-Controlled Study of the Effect of Riluzole 50 mg bid on the
Progression of Parkinson's Disease in Patients Treated with L-Dopa or
Dopamine Agonist*, sponsored by Rhone-Poulenc Rorer

Co-Investigator for *A study to Document the Clinical Utility for* Duragesic® (fentanyl
transdermal system) 12.5 mcg/h in Patients with *Chronic Nonmalignant Pain*,
sponsored by Janssen Research Foundation

Co-Investigator for *The Long-term Safety of Galantamine in the Treatment
Of Alzheimer's Disease*, sponsored by Janssen Research Foundation

Co-Investigator for *An 8-week Randomized, Double-Blind, Placebo-
Controlled Monotherapy Trial of Pregabalin for Treatment of Chronic Lower
Back Pain* sponsored by Parke-Davis

Co-Investigator for *A Multicenter, Double-Blind Clinical Trial to Assess The Safety
And Efficacy of Hormone Replacement Therapy to Prevent Alzheimer's Disease in
Women with a Family History of Alzheimer's Disease* sponsored by Columbia
University

Co-Investigator for *A Multicenter, Open-Label Study of the Safety of BOTOX (Botulinum
Toxin Type A) Purified Neurotoxin Complex for the Treatment of Increased Muscle Tone*

Page 5

*Of Both Lower Limbs Resulting in Abnormal Gait Associated with Pediatric Cerebral Palsy* sponsored by Allergan

Co-Investigator for *A Multicenter, Double-Blind, Randomized, Placebo-Controlled, Parallel Group, Clinical Study of the Safety and Efficacy of BOTOX® (Botulinum Toxin Type A) Purified Neurotoxin Complex Injections Into Areas of Focal Tenderness in Subjects with Chronic Low Back Pain* sponsored by Allergan

Co-Investigator for *A Phase 3 Randomized, Double-Blind, Placebo-Controlled Efficacy and Safety Study of Hu23F2G (LeukArrest™) in Patients with Acute Ischemic Stroke* sponsored by ICOS Corporation

Principal Investigator for *A Multicenter, Double-Blind, Randomized, Placebo-Controlled, Parallel-Group, Multiple-Dose Evaluation of the Safety and Efficacy of a modified-release oral dosage form of methylphenidate-HCI (Ritalin-QD) In Children with ADHD* sponsored by Novartis

Co-Investigator for *A Phase III Multicenter, Double-Blind, Parellel-Group, Placebo-Controlled Study of the Effect of Riluzole 50 mg bid or 100 mg bid on the Progression of Parkinson's Disease in Patients Treated with L-Dopa or Dopamine Agonist* sponsored by Rhone-Poulenc Rorer

Co-Investigator for *Pilot MRI Study of PEG-Intron (SCH 54031) in Ambulatory Subjects with Relapsing Multiple Sclerosis* sponsored by Schering-Plough Research Institute

Co-Investigator for *A Comparison of Duragesic and OxyContin for the Treatment of chronic non-malignant pain* sponsored by Janssen Pharmaceutical Products, L.P.

Principal Investigator for *A Study to Assess the Safety, Dose Conversion and Titration Of Duragesic® (fentanyl transdermal system) in Pediatric Subjects with Chronic Pain Requiring Opioid Therapy* sponsored by Janssen Research Foundation

Co-Investigator for *A Multicenter, Double-Blind, Placebo-Controlled Study Of the Tolerability and Effect of Entacapone in Parkinson's Subjects With End-of Dose Wearing Off Symptoms Occurring No Earlier Than 4 Hours After Their Most Recent Levodopa/Carbidopa Dose* sponsored by Novartis Pharmaceuticals

Co-Investigator for *An Open Label Study to Evaluate the Long-Term Safety And Effectiveness of Subcutaneous Injections of Apomorphine in the Treatment of "Off" Episodes in Patients With "On-Off" or "Wearing-Off" Effects Associated With Late-Stage Parkinson's Disease sponsored* by Mylan Pharmaceuticals, Inc.

Page 6

Co-Investigator for *An Open-label, Long-term Observational Study of the Safety and Tolerability of Sumatriptan Nasal Spray in the Treatment of Migraine In Adolescents* sponsored by Glaxo-Wellcome

Co-Investigator for *A Randomized, Double-Blind, Placebo-Controlled, Parallel Group, Single-Attack Evaluation of Sumatriptan 50mg and 100mg Versus Placebo During a Migraine Headache at the First Sign of Pain* sponsored by Glaxo-Wellcome

Co-Investigator for *Magnetic Stimulation in Diabetic Peripheral Neuropathy: Multi-Center, Randomized Placebo-Controlled Study* sponsored by New York Medical College

Co-Investigator for *A Long-Term, Open-Label Study of Methylphenidate Transdermal System in Pediatric Patients with Attention Deficit Hyperactivity Disorder* sponsored by Noven Pharmaceuticals

Co-Investigator for *A Multicenter, Double-blind, Placebo-Controlled, Safety and Efficacy Study of Methylphenidate Transdermal System in Pediatric Patients with Attention Deficit Hyperactivity Disorder sponsored* by Noven Pharmaceuticals

Co-Investigator for *A Randomized, Double-blind, Two-Period Crossover Study Comparing the Efficacy, Safety and Tolerability of Numorphan® CR (Oxymorphone HCl, controlled release) and OxyContin® (Oxycodone HCl, controlled release) in Cancer Patients Who Require Chronic Opioid Treatments* sponsored by Endo Pharmaceuticals

Co-Investigator for An Open-Label Extension Study to Evaluate the Long-Term Safety, Tolerability and Analgesic Efficacy of *Numorphan® CR (Oxymorphone HCl, controlled release) in Subjects with Cancer Pain or Chronic Lower Back Pain* sponsored by Endo Pharmaceuticals

Co-Investigator for *A Randomized Double-Blind, Placebo-Controlled Comparison of the Analgesic Activity of Valdecoxib (SC-65872) 40 mg BID As Add-On Therapy to Opioid Medication in Patients with Chronic Cancer Pain* sponsored by G.D. Searle & Co.

Co-Investigator for The Safety and Efficacy of Electrotransport (E-TRANS®) Fentanyl Compared to IV PCA Morphine for the Treatment of Post-Operative *Pain* sponsored by ALZA Corporation.

Co-Investigator for the *Evaluation of the Efficacy and Safety of Numorphan® CR (Oxymorphone HCl Controlled Release) Relative to Placebo and OxyContin®*

Page 7

*(Oxycodone HCl Controlled Release) in Subjects with Chronic Low Back Pain*
sponsored by ENDO Pharmaceuticals

Co-Investigator for the *Efficacy and Safety Study of the Oral Direct
Thrombin Inhibitor H 376/95 Compared with Dose-Adjusted Warfarin
(Coumadin®) n the Prevention of Stroke and Systemic Embolic Events
in Patients with Atrial Fibrillation (SPORTIF V)* sponsored by AstraZeneca, LP

Co-Investigator for *Pregabalin BID Add-On Titration Trial: Randomized, Double-Blind,
Placebo-Controlled, Parallel-Group, Multicenter Study in Patients with Partial
Seizures* sponsored by Warner-Lambert Company

Co-Investigator for *Pregabalin BID Add-On Titration Trial: A Follow-On Study to
Determine Long-Term Safety and Efficacy in Patients with Partial Seizures* sponsored
by Warner-Lambert Company

Co-Investigator for *A Randomized, Double Blind, Placebo Controlled Trial to
Evaluate the Efficacy, Safety, Tolerability and Pharmacokinetic/Pharmacodynamic
Effects of a Targeted Exposure of Intravenous Repinotan HCI in Patients with Acute
Ischemic Stroke* sponsored by Bayer Corporation

Co-Investigator for *A Randomized, Double Blind, Placebo Controlled Study to
Evaluate Effects of YM872 on the Evolution of Lesion Volume as Measured by Diffusion
Weighted Imaging in Patients with Acute Ischemic Stroke s*ponsored by Yamanouchi Group

Co-Investigator for *A Multicenter, Stratified, Randomized, Double Blind Placebo
Controlled Study to Evaluate Neurological Function and Disability in Patients with Acute
Ischemic Stoke given Tissue Plasminogen Activator plus YM872 or Tissue
Plasminogen Activator plus Placebo sponsored* by Yamanouchi Group

Co-Investigator for *A Randomized, Double Blind, Placebo-Controlled Study to
Evaluate Effects of YM872 On Lesion Volume As Measured By Diffusion,
Perfusion and Flair MRI In Patients With Acute Ischemic Stroke* sponsored
by Yamanouchi Group

**LICENSURE**

| | |
|---|---|
| • New York | 1975 |
| • New Jersey | 1981 |

Page 8

**ACADEMIC APPOINTMENTS**
- Assistant Professor of Neurology (Pediatrics)          1980-1981
  Albert Einstein College of Medicine
- Director Child Neurology Service                       1980-1981
  Bronx Lebanon Hospital Bronx, NY
- Assistant Clinical Professor of Neurology (Pediatrics) 1981-1983
  Albert Einstein College of Medicine

**BOARD CERTIFICATION**
- American Board of Pediatrics                           1979
- American Board of Psychiatry & Neurology              1982
  Neurology with Special Qualification in Child Neurology
- American Board of Electrodiagnostic Medicine          1984

**SOCIETY MEMBERSHIPS**
- Child Neurology Society
- American Academy of Neurology

**HOSPITAL PRIVILEGES**
- Valley Hospital Ridgewood, NJ

**PRACTICE EXPERIENCE**
- Pediatric Neurologist, Neurology Group of Bergen County    1981-2001
- Private Practice, Pediatric Neurology                      2001-Present
- Consulting Pediatric Neurologist                           1981-Present
  Eastern Christian Children's Retreat Wyckoff, NJ
- Consulting Pediatric Neurologist                           2001-2007
  Center for Brachial Plexus and Peripheral Nerve Injuries NY, NY

**PRESENTATIONS**
"The Electronic Doctor" address delivered at the Eighth Annual American Medical
Publishers Association Seminar.  Philadelphia, PA March 7, 1993

Page 9

## PUBLICATIONS

Adler, D., Horoupian, DS, Towfighi, A., Gandolfi, A., and Suzuki, K.: Status Marmoratus and Bielchowski Bodies. A Report of Two Cases and Review of the Literature. Acta Neuropathologica 56:75-77 (1982)

## LETTERS

Adler, D: Clinical problem solving. New England Journal of Medicine 333:1157 (1995)

Allen, RH and Adler, D: Severe brachial plexus injury in the posterior arm: An alternative explanation. American Journal of Obstetrics and Gynecology 186:1377-1378 (2002)