# Exhibit A

# Richard L. Luciani MD

# Diplomat American Board of Obstetrics and Gynecology

Douglas and London

Law Offices

59 Maiden Lane

6th Floor

NY, NY 10038

Re: Nanema/U▓▓ G▓▓

October 15, 2021

Dear Mr. Janis,

Thank you for the opportunity to review this matter.

Presented for evaluation and review were the following documents

1. Records from NY Presbyterian-Manhattan 9/30/18
2. Records Dr. Devorah Segal
3. PT records U▓▓ G▓▓
4. Radiology studies infant G▓▓
5. 10/2/18 NY Presbyterian records
6. Charles B Wang Community Health Center records
7. Expert report Dr. Daniel Adler

I have performed thousands of vaginal abdominal and laparoscopic procedures and am fully familiar with all surgical aspects of these surgeries including the standard of care regarding performance of these procedures.

I am being compensated for all time needed to evaluate documents or testify at deposition or trial at an hourly rate. I have no financial interest in the outcome of this matter.

I agree to review medical legal matters for both defendants and plaintiffs for over 20 years and render expert medical opinions in an unbiased impartial manner.

CASE REVIEW

Asseta Nanema a 30 y/o G1P0 EDC 10/14/18 presented to NY Prestbyterian labor and delivery on 9/30/18 at 38 weeks. Her LMP was 1/7/18. Spontaneous rupture of membranes was noted on 9/29/18 at 1am. Her history included a fibroid uterus, with positive GBS status. Examination noted 1-2cm dilation, with a vertex at -3 station. OBGYN Dr. Bui was the attending physician. Estimated fetal weight was 3500gm.

Pitocin was initiated for labor augmentation. The fetal heart pattern was category I.

During the labor process episodes of late decelerations were noted with resuscitation improving the fetal pattern.

At 7:55pm on 10/1/18 Ms. Nanema progressed to 8cm with vertex at -2 station. Epidural was in place with category I tracing noted.

Full dilation occurred on 10/2/18 at 12:09am with the vertex at +1 station.

Ms. Nanema progressed after pushing for 2 hours delivering a viable male infant at 2:10am weighing 3570gms.

Dr. Bui was the delivering physician. Dr. Bui documented no complications with the delivery.

A right arm injury was immediately recognized with the right arm not moving and a weak grasp of the right hand noted. Erbs palsy was suspected. Neurology and PT evaluations were recommended.

Subsequent PT follow up noted a right upper extremity brachial plexopathy with "waiters tip" hand positioning. A permanent injury was noted.

Subsequent neurology evaluation was performed on 10/19/20 by pediatric neurologist Dr. Daniel Adler.

Dr. Adler documented a right sided brachial plexus injury involving the 5th and 6th cervical nerves with incomplete recovery.

A right shoulder contracture and right elbow contracture were also documented. Dr. Adler opined that the brachial plexus injury was permanent.

CASE ANALYSIS

Dr. Bui performed a vaginal delivery in this case with no documentation of a shoulder dystocia. The failure to document that a shoulder dystocia at delivery does not indicate that it, in fact, did not occur.

One must evaluate the outcome in this case as well as the potential etiologies of this permanent brachial plexus injury. Clearly there was no evidence of cancer or infection that could potentially injure the nerve roots of the brachial plexus.

In the absence of underlying medical causes, the etiology of a permanent brachial plexus injury is traumatic tearing of the nerves secondary to the forceful stretching of these nerves through the utilization of excessive lateral traction employed by the obstetrical provider.

Natural labor forces will not result in a permanent brachial plexopathy. The following should be appreciated.

1. During the prenatal period amniotic fluid fills the amniotic cavity with no part of the fetus subjected to excessive pressure as long as the membranes are intact.
2. Uterine contractions spread from the fundus towards the cervix gradually thus creating an expulsive force. The muscle generates no traction force, the mechanism responsible for avulsions, ruptures and permanent brachial plexus nerve injuries.
3. Because almost 1/3 of all births occur by c-section in contemporary practice, brachial plexus palsy should be as frequent as that occurring during vaginal births if the c-section is being performed during the labor process and one is to believe that maternal forces of labor are responsible for the injury. In reality this is not the case with reports of brachial plexus injury at c-section being extremely rare.
4. The use of vacuums and forceps greatly increase the risk of brachial plexus damage. This could not be the case if a high proportion of these injuries were unrelated to vaginal birth.
5. According to ACOG brachial plexus literature transient injuries have been attributed to the labor process however permanent injuries have not been attributed to these maternal forces.

Although the records do not document shoulder dystocia encountered by Dr. Bui at delivery it is apparent that it did occur with lack of timely recognition with proper implementation of shoulder

dystocia maneuvers. The only mechanism of injury in this case was excessive lateral traction by Dr. Bui after the head delivered with the right arm impacted.

Obstetrical negligence during the delivery process by Dr. Bui caused the permanent brachial plexus injury noted in this case.

Respectfully,

Richard L. Luciani M.D.

Diplomat, American Board of Obstetrics & Gynecology

RLL/ms

# Richard L. Luciani, MD.

# Diplomat, American Board of Obstetrics and Gynecology

# Impartial Medical Consultants

26 Redwood Road					The Commons – 235 Millburn Avenue
Springfield, New Jersey 07081-2414	Millburn, New Jersey 07041

(973) 379 – 4130					Email: doctorrick50@gmail.com

Cell: 201-303-6246

December 11, 2021

Douglas and London

Law Offices- Mr. Janis

59 Maiden Lane – 6th Floor

New York, New York 10038


RE: Nanema/UMAR Guira

Dear Mr. Janis,

Upon request, I reviewed additional discovery materials in this matter, including:
1. Deposition Dr. Bui 11/2/21
2. Deposition Ms. Nanema 10/15/21
3. Deposition Hamidou Guira 10/29/21
4. Expert report Dr. Adler 11/19/21

In addition to opinions expressed in my initial 10/15/21 report, the following should also be appreciated:
1. Mr. Guira noted the following on page 14 of his deposition
    a) When the baby's head delivered thebaby was stuck,
    b) "I seen the doctor pull the baby's head"
    c) "I felt like she was going to pull my wife off the table"

He also noted the following:
    a) At delivery, one hand did not move(pg.16)
    b) He was not moving his arm at al 10/2-10/4 (p.18)
    c) His arm is not improving (p 27)

Dr. Bui stated in deposition that excessive traction was not utilized.

Dr. Bui testified that the infant's arms were both moving right after delivery; however, the record notes that the right arm was immediately limp.

Ms. Nanema testified that Dr. Bui was pulling to hard that she was pulled down the bed (p. 20). Clearly, testimony of Mr. Guira and Ms. Nanema supports the traumatic etiology of this permanent brachial plexopathy.

As there was no evidence of malignancy, infection or significant intrapartum fetal hypoxia, the etiology of this injury was improper forceful stretching of the nerves of the brachial plexus by Dr. Bui after the head was delivered by moving the head away from the right arm, ie excessive lateral traction.

Having read Dr. Adler's evaluation and assessment reports, I am in agreement with his conclusions concerning the etiology of the brachial plexopathy in this case.

Thank you.

Respectfully,

Richard L. Luciani, MD
Diplomat, American
Board of Obstetrics and Gynecology